# IN THE UNITED STATES DISTRICT COURT
## FOR THE Northern DISTRICT OF TEXAS
## Lubbock DIVISION

Form To Be Used By A Prisoner in Filing a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983

**FILED**
April 11, 2014
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

Mary Kathleen Layton
A.K.A. Bryan Layton # 1327930
**Plaintiff's name and ID Number**

Alfred D. Hughes Unit
**Place of Confinement**

CASE NO: 5-14CV0050-C
(Clerk will assign the number)

v.

Brad Livingston P.O. Box 99, Huntsville TX 77342
**Defendant's name and address**

Stevens, 8602 Peach Ave. Lubbock, TX 79404
**Defendant's name and address**

Aristumuno, 8602 Peach Ave. Lubbock, TX 79404
**Defendant's name and address**
(DO NOT USE "ET AL.")

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

Your complaint is subject to dismissal unless it conforms to these instructions and this form.

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be <u>legibly</u> handwritten in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE**. ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the Clerk of the United States Court for the appropriate District of Texas in the Division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. The list labeled as "VENUE LIST" is posted in your unit law library. It is a list of Texas prison units indicating the appropriate District Court, the Division and an address of the Divisional Clerks.

ATC 1983 (Rev. 04/06)                Page 1 of 5



RECEIVED
APR 11 2014
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## FILING FEE AND IN FORMA PAUPERIS

1. In order for your complaint to be filed, it must be accompanied by the filing fee of **$350.00**.

2. If you do not have the necessary funds to pay the filing fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis* (IFP), setting forth the information to establish your inability to prepay the fees and costs or give security therefore. You must also include a six (6) month history of your Inmate Trust Account. You can acquire the application to proceed IFP and appropriate Inmate Account Certificate from the law library at your prison unit.

3. 28 U.S.C. 1915, as amended by the Prison Litigation Reform Act of 1995 (PLRA), provides, "...if a prisoner brings a civil action or files and appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." Thus, the Court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the Court will apply 28 U.S.C. 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your Inmate Account, until the entire **$350** filing fee has been paid.

4. If you intend to seek *in forma pauperis* status, then do not send your complaint without an Application to Proceed IFP, and the Certificate of Inmate Trust Account. Complete all the essential paperwork before submitting it to the Court.

## CHANGE OF ADDRESS

It is your responsibility to inform the Court of any change of address and its effective date. Such notice should be marked "NOTICE TO THE COURT OF CHANGE OF ADDRESS" and shall not include any motions(s) for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedures.

### I. PREVIOUS LAWSUITS:

A. Have you filed any other lawsuits in the state or federal court relating to imprisonment? \_\_\_\_\_ YES __X__ NO

B. If your answer to "A" is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

1. Approximate date of filing lawsuit: N/A

2. Parties to previous lawsuit:
   Plaintiff(s): N/A

   Defendant(s): N/A

3. Court (If federal, name the district; if state, name the county) N/A

4. Docket Number: N/A

5. Name of judge to whom case was assigned: N/A

6. Disposition: (Was the case dismissed, appealed, still pending?)
   N/A

7. Approximate date of disposition: N/A

## II. PLACE OF PRESENT CONFINEMENT: Alfred D. Hughes Unit

## III. EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted both steps of the grievance procedure in this institution? __X__ YES ___ NO

Attach a copy of the Step 2 grievance with the response supplied by the prison system.

## IV. PARTIES TO THE SUIT:

A. Name of address of plaintiff: Mary Kathleen Layton A.K.A. Bryan Joseph Layton Alfred Hughes, Rt. 2 Box 4400 Gatesville, Texas 76597

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: Brad Livingston, Executive Director of TDCJ, Huntsville Texas PO Box 99, Huntsville TX 77342

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Failure to ensure compliance with TDCJ rules and law, and refusal to hear my complaint.

Defendant #2: (First name unknown), Stevens, Head Warden of Montford Unit 8602 Peach Ave. Lubbock, Texas 79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Failure to respond to letters of complaint and failure to ensure I recieved appropriate care.

Defendant #3: (First name Unknown), Williams, Head of medical on Montford unit 8602 Peach Ave. Lubbock, Texas 79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Failed to address complaint of failure to provide adequate medical care for GID, and failed to respond to my letters.

Defendant #4: (First name unknown), Aristumuno, M.D. on Montford unit 8602 Peach Ave. Lubbock, Texas 79404

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Refused to address my medical needs and instead deciding to use an endocrinologist, but making no attempt to locate one beyond initial referral.

Defendant #5: _____

_____

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.

_____

ATC 1983 (Rev. 04/06)   Page 3 of 5

## V. STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal argument or cite any cases of statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

On 9/25/2012 I was evaluated by Dr. Hanretta for Gender Identity Disorder (GID) and on 11/05/2012 it became an offical diagnosis. Estrogen Hormone Replacement Therapy was indicated and on January 14th 2013 Dr. Salis concurred with Dr. Hanretta's diagnosis. Since my diagnosis and referal no attempt has been made to give me any treatment. This violates my 8th ammendment Rights, I have written letters to the Head Warden of Montford unit (Stevens) and Head of Medical on Montford unit (Williams) one of which is attached as Exhibit A. They have not responded. I sent a letter to Brad Livingston and I was told he does not accept inmate complaints. Letter is Exhibit B. On October 1st 2012 I saw Dr. Aristumuno for a medical evaluation, and then for a follow up, she stated that I would recieve my hormone treatment but she did not want to do it so she would refere me to an endocrinologist. In March 2013, Day unknown, an endocrinologist had refused the case, but I was not informed until August 2013. I filed my step 1 on 9/21/13 I filed my step 1 and on 11/6/13 I filed my step 2 (Exhibits C and D respectively). I was sent an extension notice on 1/3/14 (Exhibit E). The 45 day extension expired on 2/17/2014 and to date I have recieved no response to my step 2, so I am sending my carbon copies along with the extension notice to verify my compliance with PLRA reqirements. The only treatment I have recieved to date is counseling, and that is not "minamally adequet" because I am ok with being transgender, my high risk psychologist, Dr. Penland on montford unit can verify this. I have expressed suicidal tendices, attempts to self castrate with string, and that is why two lisened psychiatrists diagnosed me with G.I.D and said estrogen Hormone replacement therapy was medically necessary.

## VI. RELIEF:
State briefly exactly what you want the court to do for you. Make no legal arguments. Cite not cases or statutes.

I want one of the following:
1) Estrogen Hormone Treatments to be started immediatly on unit
2) send me to a place that has an endocrinologist, such as John Scully.

## VII. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases:

Bryan Josheph Layton; Cora Jean Layton; Mary Kathleen Layton

B. List all TDCJ-ID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if know to you.

TDCJ-ID # 1327930

## VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ____ YES  X  NO

B. If your answer is "yes", give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed sanctions (If federal, give district and division): N/A
2. Case Number: N/A
3. Approximate date sanctions were imposed: N/A
4. Have the sanctions been lifted or otherwise satisfied? N/A  YES  N/A  NO

C. Has any court ever warned or notified you that sanctions could be imposed? ___ YES  X  NO

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

  1. Court that imposed warning (if federal, give the district and division): N/A
  2. Case number: N/A
  3. Approximate date warning were imposed: N/A

Executed on: 4-5-2014
(Date)

Bryan Joseph Layton
(Printed Name)

Bryan Joseph Layton
(Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachment thereto are true and correct.

2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand that I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits are dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger or serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire $350 filing fee and costs assessed by the Court, which shall be deducted in accordance with the law from the inmate account by my custodian until the filing fee is paid.

Signed this   5   day of   April  , 20  14  .
(Day)              (Month)              (Year)

Bryan Joseph Layton
(Printed Name)

Bryan Joseph Layton
(Signature of Plaintiff)

**WARNING:** The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limbed to monetary sanctions and/or the dismissal of this action with prejudice.

I am making one final attempt to resolve my issues within the structure of TDCJ. I have made several attempts over the last 16 months to resolve this issue, and while I have met with limited success, I am still being road blocked, misled and outright lied to by Medical and TDCJ employees.

First I will outline a brief summary of what has been done or not done to date, I will follow this with TDCJ Policy and Case Law that supports my position. The summary is as follows.

Near the end of 2012 I was diagnosed with Gender Identity Disorder (GID), by Dr. Henrietta, who also referred me for Hormone Replacement Therapy (HRT). At Dr. Henrietta's request, Dr. Silvie performed an evaluation for purposes of a second opinion. Dr. Silvie's opinion as a Doctor was that I did have GID and I needed HRT.

In accordance with the DSM-IV, I was referred to Dr. Aristamano to determine if I had any genetic abnormalities that would preclude a diagnosis of GID. There were no abnormalities, and the GID diagnosis and referral became official for HRT.

In February of 2013 I saw Dr. Aristamano again and was referred to an endocrinologist specialist to begin my HRT, because she did not feel comfortable doing so herself. On March 21st 2013 the endocrinologist declined to take my case, as I was counseled she had the right to do.

In Aug of 2013 I wrote Dr. Williams with my problem and have still received no response over a month later.

Below is the TDCJ Policy that supports my position, as well as a short list of case law that does so as well.

The Correctional Managed Health Care (CMHC) Policy Manual, Section G 51.11 'Treatment of Offenders with Gender Disorders', issued on May 16th 2013, states:

"If there are differences of professional opinion as to diagnosis or need for Hormone Replacement Therapy..."

Two (2) Licensed professionals have determined that I have GID and that I

need Hormone Replacement Therapy. So there is no difference of Professional opinion.

Nowhere in this policy does it state that if a specialist declines to take the case that TDCJ does not have to provide the prescribed treatment. An endocrinologist is not required to start or oversee HRT. A normal MD may do so.

The caselaw short list below supports my position that GID is a "serious medical need" under the 8th Amendment and that I must recieve "the minimally adequate care to treat the problem." Meaning the treatment must work.

* Wolfe V. Horn, 130 F.Supp.2d 648 (E.D. Pa. 2001)
* Meriwether V. Faulkner, 821 F.2d 408 (7th Cir. 1987)
* Barret V. Coplan, 292 F.Supp.2d 231 (D.N.H. 2003)
* Kosilek V. Maloney, 221 F.Supp.2d 156 (D.Mass. 2002)
* Fields V. Smith, 712 F.Supp.2d 830 (E.D. Wis. 2010)
* Allard V. Gomez, 9 Fed. Appx. 793 (9th Cir. June 8, 2001)
* Konitzer V. Frank, 03-c-717, 2010 U.S. Dist. LEXIS 45648 (E.D. Wis. May 10, 2010)

I will close with my hope that you will do the humane and lawful thing. I do not wish this to go beyond TDCJ authority if it can be helped, but as I said, this is my last attempt at such an action.

Sincerly

Offender Layton TDCJ# 1327930
AKA Mary Kathleen Layton

To Brad Livingston, Executive Director 1-10-2014

I am writing you to bring a problem to your attention. I am a Transsexual inmate in TDCJ and I have been trying to get Hormone Replacement Therapy since 2012. On 9-27-2012 I was given a diagnosis of Gender Identity Disorder (G.I.D.) by Dr. Hanretta on John T. Montford unit.

It has now been over 15 months since Hormone therapy was indicated and I have still not recieved my treatment. I filed a Step 1 (copy enclosed) and my answer was that they were waiting for an endocrinologist to assume my care. I then filed a Step 2 grievance on 11-6-2013 and have still recieved neither an extension notice nor my response. I will enclose a copy of this as well.

Below I will explain briefly both my complaints, since I know you are busy.

First, TDCJ policy G51.11 "Treatment of Offenders with Gender Disorders" in the Correctional Managed Health Care Policy Manual states in Section IV:

"The University Directors of Mental Health Services and University Regional or Senior Regional Directors will be the approving authorities for treatment plans and hormone therapy related to G.I.D."

This does not mean wether or not I take hormones, unless there is a difference of proffessional opinion. In this case two liscenced psychiatrists have indicated the need for estrogen hormones. Dr. Hanretta exact words were:

"It is my belief that you need the treatment to function fully."

My depression, anxiety and suicidality are all side effects of my untreated G.I.D.. On numerous occasions, as I have reported, I have tried or thought of self castration by blade or by tying string around my testicals and penis until black and purple. This is part of the reason for my diagnosis.

Second, Case law. I will not spend time listing case law since you can just ask the Attorney General. I will keep this section brief.

The United States Constitution, 8th Ammendment, states that all inmates must recieve the "minimally adequet care to treat a problem" that is a "serious medical need." G.I.D. is considered a serious medical need by the courts.

This means that counseling must be given only if the inmate is struggling to accept being transsexual, or does not wish to be transsexual. Neither of which applies to my case. My adequet treatment must relieve the problem, not neccessarily stop it. The only "minimally adequet care" that does that is H.R.T..

So Sir, in closing I ask that you do one of two things.
1) Inform Montford unit to start my treatment insted of lying and procrastinating. Or,

2) Send me somewhere I will have ready access to an endocrinologist such as John Sealy hospital.

    Thank you for your Time.
        Sincerely,
        Offender Bryan Layton #1327930
    A.K.A. Mary Kathleen Layton

Step 1 Grievance

9-30-2013

Bryan Layton          1327930
John T. Montford      B1-44 Bunk
          John T. Montford

Warden Stevens, Dr. Williams          9-21-2013
None Known
None Known

I am grieving my denial of medical treatment. On 9-27-2012 I was diagnosed with Gender Identity Disorder (G.I.D.) by Dr. Henrietta, and Estrogen Hormone Replacement Therapy (HRT) was indicated, in compliance with TDCJ policy G-51.11 in the CMHC manual. At his request I was later evaluated by Dr. Siliev whose opinion agreed with Dr. Henrietta's.

Once it was determined I had no genetic abnormalities by Dr. Aristumuno, I was reffered to an endocrinologist specialist on 2-24-2013. I was cautioned that the endocrinologist did not have to take the case, but I would get the treatment anyway.

In August of 2013 I was informed that the endocrinologist had declined the case in March of 2013. It was at this time I wrote a letter to Dr. Williams, Head of Medical and Psyciatry. Recieving no response I wrote an identicle letter to Dr. Williams and Warden Stevens on the 21st of September, 2013. I informed them of the situation in detail. I have recieved no response.

My complaint is this: I have recieved no treatment for my G.I.D. My complaint is Supported by the following facts:

1) My High Risk Psychologist has stated she is not here to treat my G.I.D., but to keep me alive. In any case, she has no experience in treating those with Gender Disorders.

2) TDCJ policy, G-51.11 "Treating offenders with Gender Disorders", specifies that as long as no difference of professional opinion exists, the indicated HRT will be initiated. Two Psyciatrists agree I need it.

3) Law states that G.I.D. is a serious medical need and that treatment is required and that said treatment must be minimally adequate to treat the problem." A few Case Laws:

- Brooks V. Berg, 270 F.Supp.2d 302 (N.D.N.Y. 2003)
- Wolf V. Horn, 130 F.Supp.2d 648 (E.D.Pa. 2001)
- Kosilek V. Maloney, 221 F.Supp.2d 156 (D.Mass. 2002)

I reiterate: This denial of any treatment is in violation of TDCJ policy G-51.11, and in violation of clearly established law.

I want at least my estrogen Hormone Replacement Therapy and if possible access to Gender Affirming Care.

Bryan Sayta

9-30-2013

Bryan Layton                                    1327930
J.T.M                                           B1-44 bunk.
        John T. Montford

Their answer does not conform to law and policy. According to the Correctional Managed Health Care Policy Manuel, G 51.11 "Treatment of offenders with gender disorders" and Constitutional Case Law, their is no reason a qualified (licensed) Medical Doctor cannot oversee my hormone treatments. And endocrinologist is a specialist, and NOWHERE does it say, in any forum, that an endocrinologist is required. It may be preferred but is not required.

In the CMHC policy mentioned above, Section IV it states: "The University Directors of Mental Health Services and University Regional or Senior Medical directors will be the approving authorities for <u>treatment plans</u> and <u>hormone related therapy</u> related to GID."

Nowhere in this does it say an endocrinologist or <u>any</u> specialist is required. Those people above are qualified to start and oversee my Hormone Replacement Therapy.

On 9-27-2012 I was diagnosed with GID and refered for hormone treatment. In March 2013 the endocrinologist declined to take the case. It has been almost 14 months since hormone treatment was indicated. It has been 8 months since the endocrinologist declined the case. This delay in treatment is a violation of the 8th Amendment of the U.S. Constitution. To support this I offer the following case law:

• Brooks v. Berg, 270 F. Supp. 2d 302 (N.D.N.Y.) 2003)

- Allard v. Gomez, 9 Fed.Appx. 793, 795 2001 U.S.App. LEXIS 13328 at 9 (9th cir. 6/8/2001)
- De'Lonta v. Angelone, 330 F.3d 630 (4th Cir. 2003)

These are only three (3) of hundreds in my possession, but they are representative of my complaint with my step 1 response: Just because an endocrinologist refuses, does not mean TDC can procrastinate for over a year in violation of law and policy.

Bryan Sota

11-6-2013

| Step 1 | | Grievance # | Offender Name | TDCJ # | Unit |
|---|---|---|---|---|---|
| Step 2 | X | 2014017564 | LAYTON, BRYAN | 1327930 | JM |

*(Check which box applies (Step 1 or Step 2)*



Texas Department of Criminal Justice
**NOTICE OF EXTENSION**
Offender Grievance Office

In accordance with the procedures outlined in BP-03.77, "Offender Grievances," and AD-03.82, "Management of Offender Grievances,", you are hereby notified that additional time is necessary to complete the investigation of your:

**Step 1 Grievance:** *(check the applicable box)*

☐ An additional 30 days is needed for appropriate response to your disciplinary appeal.

☐ An additional 40 days is needed for appropriate response to your grievance.

**Step 2 Grievance:** *(check the applicable box)*

☐ An additional 30 days is needed for appropriate response to your disciplinary appeal.

☐ An additional 35 days is needed for appropriate response to your Step 2 grievance.

☐ An additional 35 days is needed for appropriate response to your medical multiple issue grievance.

☒ An additional 45 days is needed for appropriate response to your medical Step 2 grievance.

T. Phillips
Grievance Supervisor                           1/3/14

_____         _____
Name and Title                                              Date

**Original – Send to the Offender**
Copy – Attach to the Grievance

Appendix M

CMHC Policy — Effective date 5/16/2012

Treatment of Offenders with Gender Disorders:

<u>Purpose</u>: To provide guidelines in the management of offenders with gender disorders.

<u>Policy</u>: Offenders with complaints consistent with gender disorders are evaluated by appropriate medical and mental health professionals and treatment determined on a case by case basis.

<u>Definitions</u>: Intersexual — An individual that is born with ambiguous genitalia, i.e., pseudo hermaphrodite or hermaphrodite.

Transsexual — An adult individual (age 18 or older) with a sense of discomfort and inappropriateness about his/her anatomic sex, who wishes to be rid of ones own genitals and to live as a member of the other sex. The disturbance has been continuous for at least two years and is not in the presence of another mental disorder, or physical intersex or genetic abnormality.

Gender Identity Disorder (GID per DMS-IV) — A strong and persistent cross gender identification, which is the desire to be, or the insistence that one is of the other sex (criteria A). This cross gender identification must not merely be a desire for any perceived cultural advantages of being the other sex. There must also be evidence of persistent discomfort about ones assigned sex or a sense of inappropriateness in the gender role of that sex (criteria B). The diagnosis is not made if the individual has a concurrent physical intersex condition (e.g., androgen insensitivity syndrome or congenital adrenal hyperplasia) (criteria C). To make the diagnosis, there must be evidence of clinically significant distress or impairment in social, occupational or other important areas of functioning (criteria D).

<u>Procedures</u>:

I. An offender suspected of being intersexual will be referred immediately to an approved medical center for diagnosis and treatment. If the offender declines recommended treatment, TDCJ Classification and Health Services will determine appropriate housing to meet the offenders medical and mental needs while assuring the safety of the offender

who is intersexual and other offenders.

II. An offender with documented or claimed transsexual or Gender Identity Disorder (GID) will receive thorough medical and mental health evaluations.
  A. The offender will be continued on the same hormone regimen, if an in effect upon arrival to TDCJ.
  B. Concerted effort will be made to expeditiously obtain the offender prior medical and psychological records.
  C. Medical evaluation will include a complete physical examination with special emphasis on the genitalia and secondary sex characteristics.
  D. Mental Health evaluation will be conducted by a Qualified Mental health Professional (QMHP). If conducted by a non-psychiatrist, the evaluation and any supporting information must be reviewed by a psychiatrist. Only a licensed psychiatrist may make the diagnosis of GID with TDC
  E. If there are differences of professional opinion as to diagnosis or age for hormone therapy, a special multidisciplinary GID committee shall convene to review the case and make a final determination. This committ will include Regional or Senior mental Health and medical directors fro each university and TDCJ medical and mental health representitives. Appointed by the Director of the Health Services Division. The GID Committe may seek other expert opinions or invite other participants as it deems appropriate.

III. When a diagnosis of Gender Identity Disorder is made—
  A. Mental health counseling will be offered.
  B. Currents accepted standards of care and the offenders physical and mental health will determine if advancement of therapy is indicated.
      1. If hormone therapy is indicated, hormone therapy will be requeste through the non-formulary process. Documentation of patient education and writte

GMHC Policy G-51.1 Continued                    Page 3

consent are required prior to submission of the non-Formulary request. (see Attachments A-1 and A-2).

2. If hormone therapy is prescribed, the offender will be followed in Chronic Care Clinic with regular assessments for complications of hormone therapy (e.g. hypertension, liver disease, heart disease, breast cancer, etc).

IV. The University Directors of Mental Health Services and University Regional or Senior Medical Directors will be the approving authorities for treatment plans and hormone therapy related to GID.

V. Facility medical staff will assure the facility warden and TDCJ Health Services Liaison are immediately notified of all offenders alleging or presenting with signs or symptoms of a gender disorder.

<u>References:</u> US Department of Justice Federal Bureau of Prisons Program Statement and memorandums on Gender Identity Disorder Evaluation and Treatment, 6/15/10 & 5/31/11

The Endocrine Society's Clinical Guidelines. Endocrine Treatment of Transsexual Persons. Journal of Clinical Endocrinology and metabolism. 2009; 94:3132-3154

National Commission on Correctional Health Care Position Statement of Transgender Health Care in Correctional Settings, October 2009

World Professional Association for Transgender Health. Standards of Care for the health of Transsexual, Transgender, and Gender non-conforming People. 7th version, www.wpath.org

EXHIBIT G

TO Montford Grievance Office          12-18-2013

I submitted a step 2 grievance a long while back (on or about 45 days). I have neither gotten an extension notice, nor my grievance back.

Could you please tell me when the grievance was recieved, and IF it was recieved? I would also like the greivance number if possible.

Grievance # 2014017564 - received 11-12-13   still under investigation — D. Stafford UGI

Thank you for your time.     DEC 20 2013

Offender Layton #1327930     (B1-32) bunk

Bryan Layton #1327930
(Mary Kathleen Layton)
Alfred Hughes Unit
Rt. 2 Box 4400
Gatesville, Texas

— Legal Mail —

U.S. District Court
Northern District of Texas
1205 Texas Avenue, C-221
Lubbock, Texas 79401-4091



RECEIVED
APR 11 2014
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

